UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    BARRETT HOLLOWAY MOORE,           Case No. 17-20106-dob
    Debtor.                                 Chapter 7 Proceeding
_____/    Hon. Daniel S. Opperman
DANIEL M. MCDERMOTT,
United States Trustee,

        Plaintiff,

v.                                      Adversary Proceeding
                                          Case No. 18-2017-dob

BARRETT HOLLOWAY MOORE,

        Defendant.

_____/

<u>OPINION REGARDING DEFENDANT'S MOTION TO DISMISS</u>

<u>Introduction</u>

    Plaintiff Daniel M. McDermott, United States Trustee, seeks to have this Court deny

Defendant a discharge under 11 U.S.C. § 727(a)(2), (3), (4), and (5) as set forth in his complaint

that is seventeen pages with sixty-seven paragraphs. Defendant Barrett Holloway Moore

requests this Court dismiss this complaint for the failure to state a claim pursuant to Federal Rule

of Civil Procedure 12(b)(6). Because the Court concludes Plaintiff has stated viable causes of

action, the Court denies Defendant's motion for the reasons in this opinion.

<u>Facts</u>

    Defendant filed a voluntary petition under Chapter 7 of the United States Bankruptcy

Code on January 24, 2017. The parties appeared before the Court on various motions filed by

1

the parties, which led, in part, to a stipulated court order regarding the 2004 Examination of

Defendant, which took place on February 13, 2018.

Plaintiff filed this adversary proceeding on March 25, 2018, seeking denial of the

discharge.  A summary of the allegations is set forth at the beginning of the complaint:

> Mr. Moore ran a company called Sovereign Deed, which wanted to privatize civil defense and disaster preparedness efforts in the event of a disruption to the supply chain network in the United States.  Sovereign Deed collapsed around 2008, with millions of dollars of debts outstanding that have bled into this bankruptcy case. After that time, Mr. Moore ran his business efforts through corporate entities ostensibly owned by his wife, but for which Mr. Moore was really the one in control.  Mr. Moore solicited and received millions of dollars from investors and other acquaintances in the years leading up to his bankruptcy, and now has nothing to show for it and no documents to explain what really happened to the funds.  Despite his arguments to the contrary, Mr. Moore is the real owner of the corporate entitles ostensibly owned by his wife, which Mr. Moore uses as alter egos and mere instrumentalities to continue siphoning off investor funds.  His schedules and testimony which hide these interests are therefore false.  Finally, Mr. Moore provided almost no documents to the chapter 7 trustee relevant to his general financial circumstances or business transactions.

The complaint's allegations also set forth details about a facility described as "the Haven," which

Defendant created after Sovereign Deed collapsed.  Some of the individuals who contracted with

Defendant for access to the Haven are Mr. Jack Templeton, a now-deceased billionaire, and Mr.

Brad Thor, a best-selling novelist.[1]  More specifically, the complaint makes allegations regarding

the following assets or sources of funds:

- "Hundreds of thousands of dollars" in access fees individuals paid Mr. Moore or his entities to secure access to "the Haven;"
- Over $2.2 million in funds from Mr. Templeton, which could be as much as $8 million;
- $100,000 paid by Mr. Thor between September 2009 and March 2010;
- $40,000 in personal property entrusted to Mr. Moore by Mr. Thor;

---

[1] Mr. Thor filed an adversary complaint against Defendant pursuant to 11 U.S.C. § 523(a)(2), (4), and (6) on April 28, 2017.  Upon stipulation by the parties, that case has been stayed pending final resolution of this § 727 action.

- $175,000 Mr. Thor gave to Mr. Moore on January 13, 2011, for 158 pallets of food and 10 pallets of surgical masks, as well as the 168 pallets of goods themselves if that is in fact where the $175,000 went;
- 10 one-ounce gold coins entrusted to Mr. Moore by Mr. Thor in the Fall of 2012;
- The $35,000 Mr. Thor gave to Mr. Moore in May 2013 for the purchase of the LARC (an amphibious vehicle from government surplus), as well as the LARC itself if that is in fact where the $35,000 went;
- $21,225 Mr. Thor gave to Mr. Moore in April 2013 for the purchase of 15 additional one-ounce coins, as well as the coins themselves if that is in fact where the $21,225 went;
- The dissipation of the $7.3 million in assets Mr. Moore now owes on Schedule F;
- The extra $1 million that MI-Trifus (one of Defendant's creditors) should have received from the liquidation of Triple Canopy (an old company of Defendant's);
- The dissipation generally of the entire $16 million or so of assets from the Triple Canopy liquidation;
- The $200,000 Mr. Moore was loaned by his wife;
- The $347,000 Mr. Moore's entities were loaned by Tiffany Moore;
- The $342,000 Mr. Moore and his wife were sued for transferring out of TRF N.A., LLC by the Chapter 7 trustee for that entity; and
- The $300,000 Mr. Moore was loaned by Joseph Hughes and Michelle Soudier.

The parties have labeled these allegations as "The Fifteen."

In his motion to dismiss, Defendant argues that the factual allegations in the complaint are "erroneous," "irrelevant," or "immaterial" and do not support a plausible claim for relief. He gives his own rendition of the facts and procedural history of this case. Defendant argues that he made full disclosures as required by the stipulated court order regarding the 2004 Examination and that many of the allegations regard transactions that are well-documented in the state court proceedings between the parties or involve documents that the Chapter 7 Trustee has had all along because, at one point, the Trustee and Mr. Thor were represented by the same counsel.[2] Defendant further argues that the alleged lost assets are too far removed from the bankruptcy in time and that Plaintiff relies on an improper legal theory.

---

[2] In an Opinion dated July 14, 2017, the Court held that there was a conflict of interest between the bankruptcy estate and Mr. Thor and therefore disqualified Mr. Thor's counsel from acting as special counsel for the Trustee.

Plaintiff responded, arguing that the factual allegations are well pled and that the complaint relies on proper legal theories. In the alternative, Plaintiff argues that if the Court finds the complaint to be deficient, leave to amend should be granted, rather than dismissal. Defendant filed a reply brief on August 12, 2018, reiterating the arguments he previously made in his motion to dismiss, and emphasizing that "[t]he instant Complaint provides a textbook case of failure to meet the Supreme Court's *Iqbal* and *Twombley* [sic] standards. It is incapable of being repled [sic] to meet those requirements, and should therefore be dismissed, in its entirety, with prejudice, for failure to state a claim."

The Court heard oral arguments on August 16, 2018 and took Defendant's motion under advisement. Subsequently, Defendant filed a supplemental brief and requested leave to do so. The Court granted Defendant's request for leave, but gave Plaintiff until September 7, 2018 to file a supplemental brief. Plaintiff did not file a supplemental brief. The Court issues this Opinion after consideration of the briefs of the parties and oral argument.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) (objections to discharges).

## Applicable Law

A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may assert by motion the "failure to state a claim upon which relief can be granted." The United States Supreme Court has held that in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege

4

"enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the Supreme Court renounced the previously "'accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 561-62 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Supreme Court in *Twombly*, while "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level," assuming that all of the complaint's allegations are true. *Id.* at 555 (internal quotations and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009), the Supreme Court confirmed that the *Twombly* standard applies in all federal civil actions and not just in antitrust disputes as was the case in *Twombly*. The Supreme Court also emphasized that the assumption that all of the allegations are true does not apply to legal conclusions: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, the Supreme Court noted that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In sum, while the plausibility standard first set forth by *Twombly* does not require "'detailed factual allegations'" or a showing of probability, *id.* at 678 (quoting *Twombly*, 550

5

U.S. at 555), "'the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory,'" *Digeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). When deciding a Rule 12(b)(6) motion to dismiss, the Court "must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The defendant has the burden of showing that the plaintiff failed to state a plausible claim for relief. *Id.*

B. 11 U.S.C. § 727(a)

1. Generally

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless an exception applies. Although exceptions to discharge are strictly construed against a creditor, *see Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor," *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D. Mich. 1997) (quotations and citation omitted). The burden of proof in objecting to a discharge under 11 U.S.C. § 727 is on the plaintiff, Fed. R. Bankr. P. 4005, and must be established by a preponderance of the evidence, *Barclays/Am. Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994). Sub-sections (2) and (4) of § 727(a) require some sort of scienter; sub-sections (3) and (5) do not.

6

2. <u>11 U.S.C. § 727(a)(2): Disposition of Property</u>

Section 727(a)(2) states:

> (a) The court shall grant the debtor a discharge, unless –
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

For this section, two elements must be proven: "1) a disposition of property, such as concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)).

3. <u>11 U.S.C. § 727(a)(3): Concealing or Destroying Financial Information</u>

Section 727(a)(3) of the Code provides that the court shall grant a debtor a discharge unless,

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

A condition precedent to discharge is that the debtor must provide to his creditors enough information to ascertain the debtor's financial condition and to track his finances with substantial accuracy for a reasonable period in the past to the present. *Wazeter*, 209 B.R. at 227 (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). "A debtor is not required to keep books or records in

7

any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess at what actually occurred." *United States Fid. & Guar. v. DeLancey (In re DeLancey)*, 58 B.R. 762, 768 (Bankr. S.D.N.Y. 1986).

The party seeking the denial of a discharge has the burden of proving the inadequacy of the debtor's records. Once the moving party shows that there is not sufficient written evidence to ascertain the debtor's financial condition and history, then the burden shifts to the debtor to show that his failure to keep adequate records was justified in the circumstances. *Wazeter*, 209 B.R. at 227. To determine whether the inadequacy of the debtor's records was justifiable, courts look at a variety of factors, including the debtor's education, sophistication, business experience, size and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances. *Id.* at 230. "Where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002) (citation omitted).

4.  11 U.S.C. § 727(a)(4)(A): Knowingly or Fraudulently Making a False Oath

Section 727(a)(4)(A) bars a debtor's discharge if he knowingly and fraudulently makes a false oath or account in connection with the case. "The false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." 6 Collier on Bankruptcy ¶ 727.04[1][c] at 727-42 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). In order to prevail under § 727(a)(4)(A), five elements must be established: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the

statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case." *Day v. Zwirn (In re Zwirn)*, No. 05-1036 BKC-AJC-A, 2005 Bankr. LEXIS 1566, at *15 (Bankr. S.D. Fla. 2005) (citations omitted).[1]

The purpose of § 727(a)(4)(A) is to ensure that debtors "'who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'" *Posillico v. Bratcher (In re Bratcher)*, 289 B.R. 205, 218 (Bankr. M.D. Fl. 2003) (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)). Section 727(a)(4)(A) ensures that adequate information is available to the case trustee and creditors without the need for examination or investigation to determine whether the information is true. *United States v. Craig (In re Craig)*, 252 B.R. 822, 828-29 (Bankr. S.D. Fl. 2000). Debtors have a "paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Id.* at 829 (internal quotation omitted).

### 5. 11 U.S.C. § 727(a)(4)(D): Knowingly or Fraudulently Withholding Information

Section 727(a)(4)(D) of the Bankruptcy Code provides that the court shall grant a debtor a discharge unless " the debtor knowingly and fraudulently, in or in connection with the case -- withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." Under this sub- section, the party objecting to discharge must show that:

> (1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; (2) was in connection with a case; (3) was withheld from an officer of the estate entitled to possession; (4) was done knowingly and fraudulently; and (5) relates to the debtor's property or financial affairs.

---

[1]While "a discharge may only be barred under § 727(a)(2) if the debtor's intent was to defraud a creditor or an officer of the estate, § 727(a)(4) does not so limit the objects of the debtor's fraudulent intent." 6 Collier on Bankruptcy ¶ 727.04[1][a] at 727-40.

*Olson v. Slocombe (In re Slocombe)*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).  Once the initial burden is met, "the Debtor must bring forth enough credible evidence to dissuade the court from exercising its discretion to deny debtor's discharge based upon the evidence presented by the objecting party."  *Id*. at 534 (citing Fed. R. Bankr. P. 4005; *Grant v. Sadler (In re Sadler)*, 282 B.R. 254, 262 (Bankr. M.D. Fla. 2002)).

      6.   <u>11 U.S.C. § 727(a)(5): Loss of Assets</u>

      Section 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  The purpose of this section was explained by the court in *Kovacs v. McVay (In re McVay)*, 363 B.R. 824 (Bankr. N.D. Ohio 2006):

> This section is derived from competing concerns: (1) the trustee and creditors' right to question the debtor about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities.  Section 727(a)(5) seeks to address these competing concerns by conditioning discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset.  In order to achieve this, paragraph (a)(5) requires debtors to disclose all vital information; there is no requirement of mal-intent or scienter.  In addition, it does not matter under § 727(a)(5) how the loss or deficiency occurred.

*Id.* at 830-31 (citations omitted).

      To satisfy his initial burden of proof, the trustee must show two things: first, that the debtor had a cognizable ownership interest in a specific asset, and second, that the debtor's interest existed at a time not too far removed from when the petition was filed.  *Id.* at 831.  Once the trustee has met his burden, the debtor must satisfactorily explain the loss.  The standard for a satisfactory explanation under § 727(a)(5) "is one that is reasonable under the circumstances."

*Id.* (citation omitted).  A reasonable explanation involves capacity for verification.  The explanation should enable a trustee to investigate the circumstances of the loss.  *Id*.

Analysis

The Court finds that Plaintiff has pled sufficient facts addressing all of the elements under § 727(a)(2), (3), (4)(A), (4)(D), and (5).  Despite Defendant's best efforts to characterize the factual allegations as facially defective, the Court finds that they support plausible claims for relief as required by the Supreme Court in *Iqbal* and *Twombly*.  Because the Court must accept all well-pled factual allegations made in the complaint as true when deciding a motion under Rule 12(b)(6), Defendant's extensive arguments regarding the "obliqueness and error" of the complaint's factual allegations are misplaced.  While this analysis governs all of the counts of Plaintiff's complaint that Defendant seeks to dismiss, the Court will address certain specific arguments of Defendant.

Defendant argues that Plaintiff has not pled any facts relating to a transfer or concealment of property within one year of the filing date for purposes of the claim under § 727(a)(2).  The Court notes, however, that under the continuing concealment doctrine adopted by the Sixth Circuit Court of Appeals, "'a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year.'"  *Keeney*, 227 F.3d at 684 (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).  Concealment involves retaining a secret benefit of ownership in the property.  *Id.* at 684.  Here, the complaint alleges that Defendant received millions of dollars from investors in the years leading up to the bankruptcy but has nothing to show for it.  Moreover, the complaint alleges that Defendant's wife owns several corporate entities, but Defendant is really the one in control of those entities.

11

Thus, even though Plaintiff does not point to a particular transfer or act of concealment in the one year immediately prior to the filing date, under the continuing concealment doctrine, the complaint's allegations support a claim that Defendant concealed his property and retains a secret benefit in that property.

Defendant relies on the case of *Moyer v. Kooistra (In re Przybysz)*, No. 12-80175 (Bankr. W.D. Mich. Nov. 29, 2012), to argue that Plaintiff improperly relies on the alter ego doctrine for purposes of the claims under § 727(a)(2) and (4). Not only is that case not binding on this Court, as Plaintiff correctly notes in his brief, it is not applicable here. In *Przybysz*, the court held that the Chapter 7 Trustee could not rely on veil piercing or alter ego doctrines to avoid transfers made by related entities, rather than the debtor, pursuant to 11 U.S.C. § 544(b). *Przybysz*, No. 12-80175, slip op. at 3. The *Przybysz* Court noted the Chapter 7 Trustee's concerns that a debtor's alleged improper prepetition conduct should not go unaddressed by pointing to the provisions of the Bankruptcy Code:

> the Bankruptcy Code includes provisions limiting a debtor's discharge to guard against its use as a shield for prepetition misconduct, including specified fraudulent acts. *See, e.g.*, 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 727(a). The court cannot accept the Trustee's public policy and equitable arguments without also undermining Congress's careful balancing of interests expressed in these statutes, including the relevant time-periods, deadlines, and other prerequisites governing such relief. The point is, there are numerous legal remedies that cause the court to hesitate to rely on its supposed equitable powers, especially when doing so would short-circuit carefully designed statutory schemes, including the Bankruptcy Code and state commercial law. The court rejects the Trustee's appeal to public policy.

*Id.* at 12. So while *Przybysz* does support the position that § 544 actions may not exist in this case, the reference to § 727 remedies cause this Court to not quickly dismiss Plaintiff's § 727 complaint in the instant case.

12

Moreover, the alter ego doctrine has been used by many courts for purposes of § 727. *See, e.g.*, *Ng v. Adler (In re Adler)*, 494 B.R. 43, 80 (Bankr. E.D.N.Y. 2013) (treating the assets and records of the corporations as if they were the debtor's for purposes of § 727 due to the court's alter ego finding), *aff'd*, 518 B.R. 228 (E.D.N.Y. 2014); *United States Tr. v. Zhang (In re Zhang)*, 463 B.R. 66, 79 (Bankr. S.D. Ohio 2012) (discussing the rationale for why "courts have frequently applied or borrowed from alter ego and reverse veil piercing theories" "[i]n determining whether individual debtors have concealed or transferred property in violation of § 727(a)(2) or made a false oath or account under (a)(4)"). *But see Trivedi v. Levine (In re Levine)*, No. 14 A 00461, 2014 Bankr. LEXIS 5161, at *12 (Bankr. N.D. Ill. Dec. 16, 2014) (refusing to apply alter ego or reverse piercing theories to expand the reach of § 727(a)(2)(A)). Under the alter ego theory, if the Court finds that Defendant's wife's corporations are really those of Defendant's, the debtor's failure to disclose information about that property may provide a sufficient basis for a denial of discharge under § 727.

In his supplemental brief, Defendant clarifies the status of the Cheboygan County Circuit Court actions as to certain alter ego theories, but none of these decisions preclude Plaintiff from asserting and continuing those theories in this case.

Defendant also argues that the assets alleged to be lost for purposes of § 727(a)(5) are "too far removed from when the petition was filed." *See McVay*, 363 B.R. at 831. Whether the loss is "too far removed" involves a determination as to whether "such loss is large enough and close enough to the filing of the bankruptcy petition that the court would expect a debtor to remember what happened to the asset and be capable of explaining what happened to the asset." *Lancs Indus., Inc., v. Dunn (In re Dunn)*, No. 08-70015, 2010 Bankr. LEXIS 4319, at *20-22 (Bankr. N.D. Ala. Dec. 3, 2010) (noting that § 727(a)(5) does not have a time requirement and

finding "that the dissipation of $124,000.00 three years before the filing of a bankruptcy petition is 'not too remote' from the filing of such bankruptcy petition"); *see also Lini, Inc., v. Schachter (In re Schachter)*, 214 B.R. 767, 774 (Bankr. E.D. Pa. 1997) (finding that the debtor "should be called to account for the loss of $250,000, which he realized when he refinanced his home . . . despite the passage of seven years").  Here, the alleged lost assets are in the millions of dollars and some were realized approximately five to six years prior to the bankruptcy filing; thus, they are large enough and close enough to the filing of the bankruptcy petition to support a claim for relief under § 727(a)(5).

Finally, although *Twombly* and *Iqbal* standards are stricter and perhaps more stringent than argued by Plaintiff's counsel at oral argument, the Court finds that Plaintiff has pled facts to raise a § 727 action above a speculative level.  The recitals are not threadbare; they are detailed. This Court, at this early stage, can find plausible claims that survive Defendant's instant motion. As Plaintiff's counsel conceded at oral argument, not all of Plaintiff's allegations may survive to the end of trial, but the allegations do survive Defendant's motion to dismiss.

Conclusion

In sum, while Plaintiff may not ultimately succeed in proving that Defendant is not entitled to a discharge, the Court finds that he has stated plausible claims for relief under sub-sections 2-5 of § 727.  For these reasons, the Court denies Defendant's motion to dismiss all counts of the complaint.  The Court directs Plaintiff, as the prevailing party, to prepare and submit an appropriate order consistent with the entry of order procedures of this Court.

**Signed on September 19, 2018**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**